```
                                                                    FILED
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ALABAMA                   01 OCT 19 PM 2:25
                     NORTHEASTERN DIVISION
                                                                U.S. DISTRICT COURT
                                                                 N.D. OF ALABAMA
```

LEWIS WILKINSON,                )
                                )
    Plaintiff,                  )
                                )
vs.                             )        Civil Action No. CV-99-S-2797-NE
                                )
PAUL H. O'NEILL,[1]             )
SECRETARY OF THE                )        **ENTERED**
TREASURY,                       )
                                )        OCT 19 2001
    Defendant.                  )

## MEMORANDUM OPINION

This action is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment (doc. no. 14). Upon review of the pleadings and briefs, the court concludes that plaintiff's claims of discrimination are due to be dismissed, and the decision of the Merit Systems Protection Board sustaining the agency's decision to remove plaintiff is due to be affirmed.

## I. FACTUAL BACKGROUND

Lewis Wilkinson was employed as a Revenue Agent for the Internal Revenue Service ("IRS"), a component of the United States Department of the Treasury, from June of 1963 until April 10, 1998. In the course of his employment, Wilkinson sustained a back injury — a herniated disc in the lumbar section of the spine. He filed an "Employees' Notice of Injury or Disease," Form CA-1 & 2, with the United States Department of Labor on September 10, 1973, reporting that this injury was caused by lifting equipment and boxes of taxpayer records.[2] He first began experiencing problems in 1965, and his condition progressively worsened. Despite his injury, Wilkinson

---

[1] Plaintiff's complaint names Robert Rubin as defendant. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Paul H. O'Neill is substituted, as he is the current Secretary of the Treasury.

[2] Administrative Record ("A. R.") at 105.



continued to work until April of 1976.[3] At that time, the IRS discussed with Wilkinson the option of disability retirement, but he indicated that he would prefer to receive worker's compensation payments.[4]

The IRS asked Dr. Benjamin Meyer to evaluate Wilkinson's ability to work. Dr. Meyer examined him on May 13, 1976, and reported to the IRS that, in his opinion, Wilkinson was permanently disabled from employment.[5]

The United States Department of Labor, Office of Worker's Compensation Programs ("OWCP"), notified Wilkinson by means of a letter dated June 15, 1976, that he was entitled to receive disability benefits due to his injury.[6]

Based on the medical reports that Wilkinson was permanently disabled, and because Wilkinson would not resign or retire, the IRS initiated action to remove him from his position. Walter H. Cowherd, Chief of the Audit Division, proposed, by means of a letter to Wilkinson dated June 16, 1976, that he be removed from his position because "[he was] physically disabled for continued employment in [his] present position and continued employment in this position would present a potential hazard to [his] health."[7] Wilkinson was placed on non-duty, non-pay — *i.e.,* leave without pay ("LWOP") — status pending the outcome of the removal action.[8] Acting District

---

[3]Wilkinson had surgery and was absent from work from December 1, 1975 through January 12, 1976. He received worker's compensation for that period, in the amount of $2,645.02. *Id.* at 737.

[4]*Id.* at 121.

[5]*Id.* at 614.

[6]The Office of Worker's Compensation Programs notified Wilkinson that compensation for total disability and total loss of wages was payable at the rate of 66 2/3 per cent of the employee's salary at the time disability began. An employee who has dependents is compensated at the rate of 75 per cent of the employee's salary. *Id.* at 138. The letter also stated that injured employees had the right to elect, between the Federal Employees' Compensation Act and the Civil Service Retirement Act, the benefits which are the more advantageous. *Id.*

[7]*Id.* at 143.

[8]*Id.* at 142, 169.

2

Director James E. Bender advised Wilkinson on July 19, 1976, that, after considering his written reply to the proposed removal, he had determined that Wilkinson was "physically disabled for useful and efficient service and continued employment in [his] present position; that continued employment in [his] present condition would be injurious to [his] health; and that [his] condition is expected to remain as present for an indefinite period of time."[9] Bender informed Wilkinson that, for these reasons, he had decided to remove him from employment with the IRS, effective July 21, 1976.[10]

Wilkinson appealed the decision to the Civil Service Commission,[11] which, on November 12, 1976, reversed the IRS's decision solely because procedural requirements of the civil service regulations had not been met.[12] Consequently, the IRS returned Wilkinson to LWOP status[13] and, apparently, no further action was take to remove him until several years later.[14]

William E. Cooper, Chief of the Examinations Branch, requested, by means of a letter to

---

[9]*Id.* at 154.

[10]*Id.*

[11]The Civil Service Commission was the predecessor to the Merit Systems Protection Board. *See* Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.).

[12]A. R. at 161-65. The Civil Service Commission found that

> the advance notice states that the action is proposed because of a physical disability which is not described. The notice sets forth neither observed deficiencies in work performance or behavior, nor assertions which establish high probability of hazard. The fact that the IRS felt that it should disqualify this appellant for the performance of his duties based on a medical diagnosis is insufficient "cause" for taking an adverse action. Moreover, there is a lack of specificity in that the advance notice fails to bridge the gap between the medical conclusions and any assertions or allegations to establish the [requisite] link....

*Id.* at 164. Accordingly, the Civil Service Commission found that the removal action was "fatally defective from a procedural standpoint." *Id.*

[13]*Id.* at 174.

[14]The IRS requested that Wilkinson report for a meeting on March 24, 1978 to discuss his medical condition and his continuing absence from work. *Id.* at 185. At the meeting, Wilkinson was directed to report to Dr. Horace E. Watson for a "fitness for duty" examination. *Id.* at 189. Additionally, Wilkinson's notes of the meeting indicate that the IRS presented him with various options including returning to work in a different position, resigning, retirement, or separation for disability. *Id.* at 190. The "fitness for duty" examination was subsequently cancelled, at Wilkinson's request. *Id.* at 194.

Wilkinson dated August 8, 1983, that he provide current medical documentation, so that the IRS could determine his ability to work.[15] Wilkinson was instructed to provide the information no later than August 22, 1983, but he failed to do so. Cooper sent Wilkinson another letter on September 6, 1983, directing him to provide the previously requested medical documentation, and to advise Cooper whether he planned to resign, retire, or return to work.[16] Cooper further advised that "[t]he Service has no obligation to maintain on its rolls permanent employees who are totally disabled and who are unlikely to return to duty."[17] Cooper subsequently met with Wilkinson, and, by letter dated October 26, 1983, asked him to report for a "fitness for duty" examination on November 8, 1983, with Dr. C. B. Thuss. *Id.* at 204. Wilkinson was examined,[18] but the medical report is not in the record. It does not appear, however, that any further action was taken by the IRS until more than a decade later.

Examination Division Chief Al Toledo contacted Wilkinson by letter dated October 7, 1997, stating that IRS records reflected that Wilkinson had been on LWOP since 1973,[19] and that the IRS was "no longer able to carry [Wilkinson] on [its] rolls."[20] The purpose of the letter was to provide Wilkinson the opportunity to resign voluntarily.[21] Wilkinson declined to do so.

Toledo then proposed, by letter to Wilkinson dated October 23, 1997, that Wilkinson be removed from his position because he was unavailable to perform his duties.[22] The proposed

---

[15]*Id.* at 196-97.

[16]*Id.* at 199.

[17]*Id.*

[18]Wilkinson said that he kept the appointment with Dr. Thuss, and recalls being told by the doctor that he was unable to work. *Id.* at 1222-23.

[19]This date is incorrect, as Wilkinson continued working until 1976.

[20]A. R. at 214.

[21]*Id.*

[22]*Id.* at 211. In the most recent medical report provided to the U.S. Department of Labor, dated February 11,

removal was sustained by William L. Thompson, the Assistant District Director of the Gulf Coast District,[23] on March 24, 1998.[24] Wilkinson appealed the decision to the Merit Systems Protection Board ("MSPB").

Pamela B. Jackson, an administrative judge for the MSPB, entered an initial decision dismissing the case without prejudice on July 23, 1998.[25] The appeal was reinstated on December 11, 1998. Wilkinson asserted in his appeal that he was removed based upon his disability, race, color, and/or age. He requested that he be returned to LWOP status.

A hearing was conducted before the administrative judge, and, on April 8, 1999, an initial decision was issued sustaining the IRS's decision. The administrative judge observed that Wilkinson did not claim that he was physically able to perform the duties of his position, and that his physical condition was worsening. She noted that Wilkinson wanted the IRS to retain him indefinitely in LWOP status, because "the longer he remained in a LWOP status, the greater the value of his unpaid annual leave. His desire is to have the IRS pay the value of his annual leave to his heirs at the time of his death."[26] The administrative judge found that the IRS had established by a preponderance of the evidence that Wilkinson was "unavailable to perform the duties of his position" due to his medical condition, and sustained the charge.[27]

The administrative judge next assessed Wilkinson's claim that he was removed because of

---

1997, Dr. J. Clayton Davie opined that "[d]ue to [Wilkinson's] failed back syndrome, his spinal fusion and adhesive arachnoiditis, I do not feel that he is capable of being gainfully employed." *Id.* at 216.

[23]*Id.* at 1270.

[24]*Id.* at 249.

[25]It appears that the parties initially intended to settle the matter.

[26]*Id.* at 898-99. Wilkinson still had 240 hours of annual leave to his credit, for which he was entitled to be paid upon separation from the IRS. *Id.* at 1140.

[27]*Id.* at 899.

5

his disability. She noted there was no evidence in the record to support Wilkinson's contention that he had sought an accommodation in the form of shorter work hours, and that it was not clear from the medical evidence that he could have worked even on a part-time basis.[28] Accordingly, the administrative judge determined that Wilkinson had not established that he was a "qualified" disabled employee, such that he could perform the duties of his position with or without accommodation, and that, therefore, his claim that he was removed based on his disability failed.[29]

Turning to Wilkinson's claims of discrimination based on race, color, or age, the administrative judge observed that Wilkinson had failed to specifically state the basis of his claim.[30] As support for his discrimination claim, he submitted a memorandum ruling from the Western District of Louisiana, in which the court found that an affirmative action diversity initiative implemented by the IRS was unconstitutional. The administrative judge noted that it was not clear how the ruling related to Wilkinson's claim. Wilkinson did not offer any evidence that he was removed for discriminatory reasons, and the administrative judge determined that his discrimination claims were without merit.[31]

Finally, the administrative judge reviewed the reasonableness of the penalty imposed by the IRS. The administrative judge observed that William L. Thompson, the deciding official, testified that continuing to retain Wilkinson in LWOP status adversely impacted the IRS's budget and staffing, and, in response to the proposed removal, Wilkinson offered no evidence that he could return to work.[32] The administrative judge found Thompson's testimony persuasive, and further

---

[28]*Id.* at 900.

[29]*Id.*

[30]*Id.*

[31]*Id.* at 901.

[32]During the hearing, Thompson testified that in 1995, in connection with the restructuring and consolidation

6

found that because the medical evidence demonstrated that Wilkinson had been unable to perform his job duties for more than twenty years and was not expected to improve or return to work, the IRS had established that "the penalty of removal was a proper exercise of managerial judgment and did not exceed the limits of reasonableness."[33] Accordingly, the IRS's decision to remove Wilkinson from his position was affirmed.

Wilkinson filed a petition for review with the MSPB, which was denied on September 14, 1999.

## II. DISCUSSION

### A.    Jurisdiction

Wilkinson filed a petition for review and complaint of discrimination on October 18, 1999.[34] Count one of the petition for review and complaint seeks judicial review of the MSPB's decision, count two alleges that he was unlawfully discriminated against based on his disability, and count three alleges that he was unlawfully discriminated against based on his age, and that he was deprived of his rights. In Wilkinson's brief submitted in response to defendant's motion to dismiss or, in the alternative, for summary judgment, Wilkinson abandons his claims of discrimination based on disability and age (counts two and three of the petition for review and complaint), conceding that "[b]ased on the [administrative] record now under review by this Court, the undersigned cannot effectively counter the argument of opposing counsel in his memorandum."[35] Therefore, only count

---

of the New Orleans, Jackson, and Birmingham offices into one district, the personnel records of all of the divisions in those offices were reviewed. During the course of this review, it came to Thompson's attention that Wilkinson was still on the IRS's payroll in LWOP status. Thompson explained that, although Wilkinson was in a non-pay status, the IRS was precluded from filling his position, and was required to reimburse the Office of Worker's Compensation Programs for the cost of the benefits it paid to Wilkinson. *Id.* at 1270.

[33]*Id.* at 902.

[34]Doc. no. 1.

[35]Memorandum Brief — Response to Defendant's Motion to Dismiss, and/or, in the Alternative, for Summary

one of the petition for review and complaint remains at issue.

Count one of the petition for review and complaint deals solely with the IRS's decision to remove Wilkinson from his position. Specifically, Wilkinson contends that the issue of whether his removal was proper was resolved in his 1976 appeal to the Civil Service Commission, which was sustained on procedural grounds. Wilkinson further contends that the IRS's adverse action against him was barred by the doctrine of laches. Finally, he argues that the MSPB's decision was arbitrary, capricious, and an abuse of discretion, and that it is unsupported by substantial evidence.

The statute governing judicial review of decisions of the MSPB, 5 U.S.C. § 7703, provides, in pertinent part, as follows:

> (a)(1) Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.
> ...
>
> (b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.
>
> (2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 USC 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.
>
> (c) In any case filed in the United States Court of Appeals for the Federal Circuit, the court shall review the record and hold unlawful and set aside any IRS action, findings, or conclusions found to be —

---

Judgment (doc. no. 29), at 4.

>   (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
>   (2) obtained without procedures required by law, rue, or regulation having been followed; or
>
>   (3) unsupported by substantial evidence;
>
> except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.
>
> ....

Section 7702 defines the "cases of discrimination" excepted from the jurisdiction of the Court of Appeals for the Federal Circuit, as follows:

>   (a)(1) ... the case of any employee or applicant for employment who —
>
>>   (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and
>>
>>   (B) alleges that a basis for the action was discrimination prohibited by —
>>
>>>   (i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16),
>>>
>>>   (ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)),
>>>
>>>   (iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),
>>>
>>>   (iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or
>>>
>>>   (v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph.

Thus, appeals from so-called "mixed cases," or those that challenge the MSPB's

determination of both the discrimination and non-discrimination issues lie with the district court, while those challenging only the MSPB's determination of the non-discrimination issues are within the exclusive jurisdiction of the Court of Appeals for the Federal Circuit. *See Williams v. Department of the Army*, 715 F.2d 1485, 1491 (Fed. Cir. 1983).

Here, while Wilkinson contended before the MSPB that he was unlawfully removed from his position because of his disability and age,[36] he has abandoned those claims before this court. His sole remaining claim challenges the MSPB's determination of the non-discrimination issues. This case thus presents a jurisdictional dilemma. As discussed above, the Federal Circuit has exclusive jurisdiction to review MSPB decisions on claims that are not based on discrimination. Accordingly, where the complaint raises issues of discrimination that are quickly disposed of, through dismissal, waiver, or abandonment, the question becomes whether the court should retain jurisdiction over the non-discrimination claims.

The Fourth Circuit addressed this question in *Afifi v. United States Department of Interior*, 924 F.2d 61 (4th Cir. 1991):

> Our task is to harmonize three indisputable congressional objectives — (1) that the Federal Circuit should be the uniform voice in federal personnel matters, (2) that the district courts throughout the country should hear all claims arising under the antidiscrimination laws, and (3) that judicial resources not be wasted by parallel actions. First, we join those courts that have held that a district court may dismiss an entire mixed case where it finds that a plaintiff has engrafted a sham discrimination claim onto his complaint in order to defeat the Federal Circuit's jurisdiction. On the other hand, we reject the extreme notion that the district court's jurisdiction over the nondiscrimination claim automatically disappears with any dismissal of the discrimination claim.
>
> In the middle ground, where the plaintiff's discrimination claim is not brought as a jurisdictional charade but nonetheless quickly evaporates, we leave to the district court's discretion one of two alternatives — retain jurisdiction over the

---

[36]In Wilkinson's appeal to the MSPB, he also contended that he had been removed on account of his race.

nondiscrimination claim, or (2) transfer the case to the Federal Circuit under 28 U.S.C. § 1631. In no event should a plaintiff who brings his case in good faith in the district court be deprived of a forum for his nondiscrimination claim.

*Id.* at 64 (footnotes omitted). The Fourth Circuit held that the exercise of the district court's discretion should be guided by the same factors considered when determining whether to retain jurisdiction over pendent state-law claims — judicial economy, convenience, concerns for federalism, and fairness to litigants. *Id.* While the Fourth Circuit's decision in *Afifi* is not binding on this court, its reasoning is sound.

Applying those factors to this case, the court concludes that retaining jurisdiction over Wilkinson's non-discrimination claims would further the interests of judicial economy, convenience, and fairness to the litigants, and, would have only a minimal impact on concerns for federalism — *i.e.,* "the concern for uniformity in federal personnel policy Congress envisioned when it gave exclusive jurisdiction over nondiscrimination claims to the Federal Circuit." *Id.*

**B.    Res judicata**

Res judicata — also called "claim preclusion" — is a legal principle providing that a final judgment rendered on the merits precludes the parties to the action, or those in privity with them, from relitigating all claims that were (or could have been) litigated in the prior action. *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

Wilkinson contends that the decision of the Civil Service Commission in 1976, reversing the IRS's decision to remove him from federal service, bars the 1998 removal action. Wilkinson fails, however, to meet the first part of the test — that there was a final judgment rendered on the merits — as the decision of the Civil Service Commission was based solely on procedural grounds. Indeed, the Civil Service Commission explicitly stated that, due to the procedural defect, it did not consider

the substantive issues raised by the parties.[37] Thus, Wilkinson's argument fails.

C. **Laches**

Wilkinson contends that the IRS's adverse action against him is barred by the doctrine of laches. "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Even assuming that the IRS should have acted long before 1998 to initiate an action to remove Wilkinson (and this court does so assume), Wilkinson still has failed to demonstrate that he was harmed in any way by the delay.

D. **Judicial Review of the MSPB's Decision**

The court's role in reviewing decisions of the MSPB is a narrow one. The decision must be affirmed unless the court concludes that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 7703(c). The court concludes, upon full and thorough review of the administrative record and the parties' briefs, that the MSPB's decision sustaining the IRS's removal of Wilkinson is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the decision of the Merit Systems Protection Board sustaining the decision of the IRS to remove Wilkinson from federal service is affirmed. His discrimination claims are dismissed. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __19th__ day of October, 2001.

_____
United States District Judge

---

[37] A.R. at 164.